(Benjamin H. Mulliken *v.* Barnet Aughinbaugh and John Clippinger.)

that of a bailee. And from this it is evident that he has but a qualified property. But of what value to the argument is it, that the ownership of the insolvent debtor was not divested, if the property were *in gremio legis?* And that it was, it is impossible from the nature of the case to doubt. The proceeding in cases of insolvency is a process of distribution among creditors; to accomplish which it is absolutely necessary that the law take possession of the fund. To this end, it is provided in the "Act relating to insolvent debtors in the city and county of Baltimore," passed by the legislature of Maryland, in 1816, that the provisional trustee " shall take possession for the benefit of the creditors of such insolvent debtor, of all property, estate and effects, books, papers, accounts, bonds, notes and evidences of debt." Surely against such possession the courts of Maryland would not permit a creditor to gain a preference by execution or otherwise; and if such preference could not be gained there, a creditor bound by the laws of that state, could use the process of the courts with no better success here.

The property was therefore not subject to attachment by an inhabitant of Maryland; not however because a foreign attachment may not issue at the suit of a non-resident, (for that has never before been doubted,) but because it was previously attached by the laws of Maryland, by which the plaintiff is bound. This decision of the preceding points, relieves us from deciding whether the attachment abated by the death of the defendant between interlocutory judgment, and the execution of a writ of enquiry of damages: a nice and critical question, which we would not determine without more consideration than we have had time to bestow on it.

Judgment affirmed.

---

JOHN BAILY, by his Attorney in fact, JOSEPH TREGO, *against* JOHN HERKES and ISAAC SHELLEBARGER, Executors of ELIZABETH SNYDER, deceased.

IN ERROR.

Parol evidence of the declarations of a testator at the time the will was written, may be received in evidence, to support a presumption that the legacy was redeemed by the testator in his life time.

WRIT of error to the common pleas of Cumberland county.

This was an action of debt brought by the plaintiff against the defendants, to recover a legacy under the will of *Elizabeth Snyder,* deceased, which was bequeathed in the following words, " I give and bequeath to *John Baily,* the boy that was living with me, and

(John Baily, by his attorney in fact, Joseph Trego, *v.* John Herkes, and Isaac Shellebarger, executors of Elizabeth Snyder, deceased.)

my deceased husband in his life time, one hundred dollars." The will was dated 21st October, 1824, and proved immediately after the death of the testatrix, on the 23d February, 1826, and read to the jury.

The defendants then offered to prove, by the person who wrote the will, that while writing it, the testatrix said, she wanted to pay *John Baily*, one hundred dollars, according to the request of her late husband, and asked the witness if it were inserted as a legacy in the will, if she could still pay it in her life time; and he advised her to take a receipt for it, or pay it in the presence of a witness, and that before the death of said *Elizabeth*, she did in fact pay the one hundred dollars to *John Baily.*

Which evidence was objected to by the plaintiffs counsel, on the ground, that the bequest in the will is general, and cannot be qualified by parol evidence, so as to shew any particular intention of the testatrix.

The objection was overruled, and exception taken by the plaintiff.

The following is the substance of the testimony then given:— That *David Snyder*, the late husband of *Elizabeth Snyder*, the testatrix, made a will on the 18th July, 1818, by which he bequeathed nearly his whole estate to his wife, and that before his death, which happened the 16th February, 1819, he said to his wife, that he had intended to bequeath to *John Baily*, one hundred dollars, but at the time of writing his will he had forgotten it, and then enjoined it upon her to give *John Baily* one hundred dollars, out of his estate. That in October, 1824, she communicated this injunction of her husband to the person who was at that time writing her will, and her intention to obey it; and after the will was written, she told the witness that if *Baily* should stand in need of the money, before her death, she would pay it to him. The will remained in the possession of the testatrix, and about a year after it was written, she sent for *John Baily*, and said to him, "that her husband had enjoined her to give him one hundred dollars, out of the estate, and she had waited a good while for a favourable opportunity, that it might go to a good use." She then went to the same desk in which her will was, and got a hundred dollars in notes, and gave them to *Baily.* Her will remained in her possession, unaltered, until her death, which happened two or three months afterwards.

The court (*Reed*, president,) delivered the following charge.

*To the Jury.*—There are two points involved in this case, one of law and the other of fact. It is contended that, *Elizabeth Snyder*, having bequeathed one hundred dollars to *John Baily*, in her last will and testament; and that will having been duly proved after her death, that " the words of that will cannot be supplied, contradicted, or explained by parol evidence—and that therefore the

(John Baily, by his attorney in fact, Joseph Trego, *v.* John Herkes, and Isaac Shellebarger, executors of Elizabeth Snyder, deceased.)

testimony of *John Bear*, ought to have no influence upon the minds of the jury in making up their verdict." The legal posititon thus taken by plaintiff's counsel is correct enough, but the consequence does not follow which the plaintiff contends for. The will of *Elizabeth Snyder* is plain and unambiguous, and clearly imports an intention to give the legacy of one hundred dollars to *John Baily*. This is not and cannot be controverted by parol proof. But being admitted, it is competent for the defendant still to shew that the legacy so intended, was in fact paid in the life time of the testatrix. It would be a fraud if the law established any other rule. Taking a case where but one bounty is intended of one hundred dollars, and provision is made by will for conferring that bounty, if paid in the life time of the testator, it would be against his will for the legatee to claim a second bounty of one hundred dollars, afterwards, under the will. The law is then open for the jury to inquire, whether the one hundred dollars named in the will, and the one hundred dollars paid by *Elizabeth Snyder*, in her life time, constitute the same sum. If but one bounty was intended, and that was distinctly paid by Mrs. *Snyder*, in her life time, in full and complete satifaction of the whole, then the plaintiff cannot recover. But if the two sums were different—one intended as the bounty of her husband, and the other as her own bounty, then the plaintiff ought to recover. This is a question of fact for the jury—you ought to be well satisfied that the payment of the one hundred dollars in her life time, was not in lieu of the same one hundred dollars mentioned in her will, before you find for the plaintiff.

In this court, the admission of the evidence mentioned in the first bill of exceptions, and the charge of the court, were assigned as errors.

*Watts*, for plaintiff in error.

The rule of law is unquestioned, that a will is not to be expounded by any thing but itself; and this rule as applicable to this will, is clearly expressed in the case of *Innes* v. *Johnston*, 4 *Ves.* 573, where it is said: "It turns out that there was among the assets one bond for the exact amount of the legacy; but there were many other bonds belonging to the testator, and it was insisted, and *very properly*, that the court is, to determine, upon the face of the will, whether the legacy be specific or pecuniary, and not to travel into the account of the effects, to see whether that shall be turned into a specific legacy, which upon the face of the will is to be taken as pecuniary." The same doctrine is laid down in *Andrews* v. *Emmot*, 2 *Bro. C. C.* 297, by Lord *Eldon*, in *Nannock* v. *Horton*, 7 *Ves.* 400, in 1 *Ves. Jun.* 285, and in 1 *Rop. on Leg.* 273. There is a class of cases founded in the relation between parent and child, wherein a court of equity, without any intention *expressed* by the father, raises a *presumption* upon the natural obligation he

(John Baily, by his attorney in fact, Joseph Trego, *v.* John Herkes and Isaac Shellebarger, executors of Elizabeth Snyder, deceased.)

owes to his child.    That a gift, either by deed or will, is intended not merely as a bounty, but a *portion;* but the same presumption does not arise between the legatee and a stranger, or even a putative father.    Where a stranger or putative father gives a legacy for a *particular* purpose, *expressed* in his will, and afterwards advances money for the *same* purpose, it is an ademption of the legacy. 1 *Rop. on Leg.* 272. It follows that if this purpose is not expressed in the will, it cannot be made appear by parol evidence. In this case, the same evidence which proved the payment of the one hundred dollars, to *John Baily,* established the fact, that it was paid in pursuance of the injunction of the husband of the testatrix, or in other words in discharge of the obligation she owed to her husband, it was in fact the bounty of her husband.    The parol evidence admitted by the court so explained and qualified the bequest in the will, as to shew, that the *intention* of the testatrix in her will, was, in that way to comply with the injunction of her husband, that she did not intend the legacy as a bounty of her own, as it appeared in the will to be, but the bounty of her husband.

*Carothers,* for defendant in error, whom the court refused to hear.

Judgment affirmed.

------

JOHN MOORE, the elder, JOHN MOORE the younger, JAMES M'CORMICK, JAMES GIVEN and GEORGE WILSON, Administrators of WILLIAM MOORE, deceased, appellants, *against* GEORGE KLINE, Jun. appellee.

M. obtained judgment, in November, 1808, upon which he issued a *sci. fa.* to *August term,* 1810, to which the plea of payment was put in, and issue joined thereon.    His counsel was appointed president judge, and in 1816 a list of causes in which he had been concerned, and among them this, was certified for a special court.    On this list the words, "*settled says Mr. Duncan,*" were written in the hand-writing of the judge, in the entry of this cause; and again, on another list, certified in 1817, the word "settled." Mr. D. was counsel for the defendant, and these entries were never transferred from the trial lists, but in 1823, they were on motion ordered to be stricken out, and in 1825, a verdict and judgment rendered for the plaintiff.    *Held* that the lien of the judgment remained, and was not postponed to a judgment obtained against the defendant after these entries had been made, and before they had been stricken out.

A trial list, certified under an act of Assembly for holding a special court, forms no part of the *record;* it is the private paper of the judge, which he has a right to do with as he pleases, and the entries made upon it by him, are intended for his own information.

THIS was an appeal from the decree of the court of common pleas of Cumberland county, distributing the proceeds of the sale of